**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KEITH CARR, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 13 cv 6063 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| ERIC JEHL, STAR NO. 13778, | ) | |
| REBECCA THUESTAD, STAR NO. | ) | |
| 12804, and THE CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' motion for summary judgment [21] on Plaintiff's civil rights complaint. Plaintiff Keith Carr brings three counts that relate to his August 25, 2011 arrest in Chicago and subsequent prosecution for various firearm offenses that were later *nolle prossed*. Plaintiff alleges two counts pursuant to 42 U.S.C. § 1983 against Chicago Police Officers Eric Jehl and Rebecca Thuestad that are styled as unreasonable seizure (Count I) and unreasonable search (Count II) claims under the Fourth and/or Fourteenth Amendments. Plaintiff also alleges a supplemental state law malicious prosecution claim (Count III) against the Officers and the City of Chicago. For the reasons that follow, the Court grants summary judgment to Defendants on all three counts.

I. **Background**

A. **Statement of Facts**

The Court has taken the relevant facts from the parties' Local Rule ("L.R.") 56.1 statements. Rule 56.1 requires a party moving for summary judgment to submit a statement of material facts as to which the movant contends there is no genuine issue and which entitles the

movant to judgment as a matter of law. As the Seventh Circuit has stressed, facts are to be set forth in Rule 56.1 statements, and it is not the role of the Court to parse the parties' exhibits to construct the facts. Judges are not "like pigs, hunting for truffles buried in briefs." *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991). It simply is not the court's job to sift through the record to find evidence to support a party's claim. *Davis v. Carter,* 452 F.3d 686, 692 (7th Cir. 2006). Rather, it is "[a]n advocate's job * * * to make it easy for the court to rule in [her] client's favor * * *." *Dal Pozzo v. Basic Machinery Co., Inc.,* 463 F.3d 609, 613 (7th Cir. 2006).

It is the function of the Court to review carefully statements of material facts and to eliminate from consideration any argument, conclusions, and assertions that are unsupported by the documented evidence of record offered in support of the statement. See, *e.g.*, *Sullivan v. Henry Smid Plumbing & Heating Co., Inc.*, 2006 WL 980740, at *2, n.2 (N.D. Ill. Apr. 10, 2006); *Tibbetts v. RadioShack Corp.*, 2004 WL 2203418, at *16 (N.D. Ill. Sept. 29, 2004). Merely including facts in a responsive memorandum is insufficient to put issues before the Court. *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1313 (7th Cir. 1995); *Malec v. Sanford*, 191 F.R.D. 581, 594 (N.D. Ill. 2000). In addition, L.R. 56.1 requires that statements of facts contain allegations of material fact and that factual allegations be supported by admissible record evidence. See L.R. 56.1; *Malec*, 191 F.R.D. at 583-85. Where a party improperly denies a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems that statement of fact to be admitted.

### B.   Facts

On August 25, 2011, an unknown individual called 911 and reported that a "male just pulled a gun." [28], Defs.' Reply to Fact Stmt. at ¶ 9. The caller did not identify himself, but the 911 system recorded his telephone number. [22], Defs.' Fact Stmt. at ¶ 11. The caller also

stated that the male who had pulled the gun was in a garage in a gray Cadillac behind a Super Sub near Roosevelt and Pulaski streets. *Id.* at ¶ 10. The caller was screaming, yelling, and not answering questions. *Id.* Chicago Police Officers Eric Jehl and Rebecca Thuestad (the "Officers" or "Defendants") were patrolling the area approximately 30 to 40 feet from the intersection of Roosevelt and Pulaski when the call was made. *Id.* at ¶ 13. The 911 dispatcher forwarded the information from the 911 call to the Officers, [27], Pl.'s Fact Stmt. at ¶ 3, and they arrived at Plaintiff Keith Carr's garage located at 1212 S. Harding Avenue in Chicago, behind the Super Sub near the Roosevelt and Pulaski intersection, less than one minute later, [22], Defs.' Fact Stmt. at ¶¶ 5, 14.

Plaintiff testified that he was cleaning out his garage when the Officers arrived. [27], Pl.'s Fact Stmt. at ¶ 4. Plaintiff owns a gray Cadillac, which was parked in his garage that day. *Id.* at ¶ 6. Plaintiff asserts that while he was cleaning out the garage, he found a closed Crown Royal bag in a milk crate that contained a revolver that belonged to his deceased father. *Id.* at ¶ 7. Plaintiff never opened the bag, but believed that it contained the revolver based on its weight. *Id.* Immediately after Plaintiff found the bag, he heard the Officers approaching and opened the garage door, which had been closed while he cleaned. *Id.* at ¶¶ 4, 8. Plaintiff put the still-unopened Crown Royal bag underneath the driver's seat of his Cadillac. *Id.* at ¶ 9.

Officers Jehl and Thuestad parked in front of Plaintiff's garage. *Id.* at ¶ 11. According to the Officers, Plaintiff was sitting in his car eating a cheeseburger when they arrived. *Id.* at ¶ 12. Plaintiff maintains that he was standing outside of his car by the driver's side rear door when he saw the police car and heard Officer Jehl state, "there he is." *Id.* at ¶ 13. In any event, Officer Jehl told Plaintiff to get his hands up and exit the garage. [22], Defs.' Fact Stmt. at ¶ 16. Plaintiff complied. *Id.* Jehl searched Plaintiff for about two minutes, or performed a "protective

pat down," according to Defendants, while Officer Thuestad pointed her weapon at Plaintiff. *Id.* at ¶ 17; [27], Pl.'s Fact Stmt. at ¶ 15. Officer Jehl asked Plaintiff if he was in a confrontation with anyone, and Plaintiff stated that he was not. [22], Defs.' Fact Stmt. at ¶ 16. Plaintiff also told the Officers that he did not have a weapon on his person; nor was a weapon in view while the Officers searched Plaintiff. *Id.* No weapons were found during the pat down. [22], Defs.' Fact Stmt. at ¶ 18.

Officer Thuestad then stated: "I'm going to search that car." [27], Pl.'s Fact Stmt. at ¶ 17. Plaintiff told the Officers that they needed a warrant to enter his garage, but Thuestad entered the garage and searched Plaintiff's Cadillac for about 15 seconds, nonetheless, without Plaintiff's consent. *Id.* at ¶¶ 17–19. Thuestad found the Crown Royal bag and the gun inside. *Id.* at ¶ 19. Thuestad then removed five rounds of ammunition that the gun contained. [22], Defs.' Fact Stmt. at ¶ 24. Thuestad ran a name check on Plaintiff, which indicated that Plaintiff had an address in Hinsdale, Illinois, which matched the address on Plaintiff's driver's license. *Id.* at ¶ 25. Jehl then placed Plaintiff under arrest. *Id.* at ¶ 27. Jehl drove Plaintiff's vehicle to the police station, while Thuestad transported Plaintiff there. *Id.* at ¶¶ 28–29.

At the station, the Officers learned that Plaintiff's Firearm Owner's Identification Card ("FOID Card") had been revoked and that Plaintiff previously had been arrested at the 1212 S. Harding address for trespass. *Id.* at ¶¶ 30–31. Plaintiff maintains that the trespass charges were dismissed. [25], Pl.'s Resp. to Fact Stmt. at ¶ 32.

Plaintiff initially was charged with three offenses: unlawful use of a weapon under 720 ILCS 5/24-1.6(a)(1), possession of a weapon with a revoked FOID Card under 430 ILCS 65/2-A-1, and possession of ammunition without a FOID Card under 430 ILCS 65/2-A-2.[1] [22],

---

[1] Defendants improperly cite the Illinois Firearm Owner's Identification Card statute as 435 ILCS 65/2 in their summary judgment briefing. The correct citation is to *430* ILCS 65/2, which is the statute under

Defs.' Fact Stmt. at ¶ 32.  Officer Thuestad signed the criminal complaints, talked to the Assistant State's Attorney, and testified in criminal court.  *Id.* at ¶ 33.  Officer Jehl clerked the criminal complaints and prepared the original case incident report and the inventories for the items recovered.  *Id.* at 34; [27], Pl.'s Fact Stmt. at ¶ 21.

The charges related to the revoked FOID Card were *nolle prossed* at the probable cause hearing.  [22], Defs.' Fact Stmt. at ¶ 32.  The unlawful use of a weapon charge was amended by the prosecutor to a felon in possession change under 720 ILCS 5/24-1.1(a).  *Id.*  This charge also was *nolle prossed* after the Cook County Circuit Court, on reconsideration, granted Plaintiff's motion to quash his arrest and suppress evidence.  *Id.* at ¶ 37.

## II.      Summary Judgment Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (quotation omitted).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.  The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact.  See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id.* at 322.  The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec.*

---

which Plaintiff was charged for possessing ammunition and a firearm without a valid FOID Card.  See [22], Defs.' Fact Stmt., Ex. I, Certified Stmt. of Conviction/Disposition.

*Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [opposing] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson,* 477 U.S. at 252.

## III.    Discussion

The complaint contains three counts for unconstitutional seizures, unconstitutional searches, and malicious prosecution but does not allege in much greater detail the specifics of the claims. In their motion for summary judgment, Defendants construe Count I as alleging an unlawful investigatory stop (or *Terry* stop) and false arrest. Defendants construe Count II as alleging that the entry into Plaintiff's garage and the search of his car was unlawful. Defendants address the malicious prosecution count as if Plaintiff alleges malicious prosecution with respect to all four offenses with which he was charged. Plaintiff does not take issue with Defendants' characterization of his claims. The Court addresses each count below.

### A.    Count I—Unreasonable Seizure under the Fourth Amendment

#### 1.    Defendants' Initial *Terry* Stop of Plaintiff

*Terry v. Ohio*, 392 U.S. 1 (1968) "authorizes a brief investigatory detention of an individual whom the police reasonably suspect, based on specific and articulable facts, of engaging in criminal activity." *U.S. v. Snow*, 656 F.3d 498, 500 (7th Cir. 2011). Reasonable suspicion "is more than a hunch but less than probable cause and considerably less than preponderance of the evidence." *Id.* (quoting *Jewett v. Anders*, 521 F.3d 818, 823 (7th Cir. 2008)) (internal quotation marks omitted). During a *Terry* stop, an officer also may frisk an individual for weapons when the officer reasonably believes that the individual may be armed and poses a danger to the officer or others nearby. *Id.* at 501. Whether suspicion of criminal

activity is reasonable calls for "an objective inquiry into all of the circumstances known to the officer at the time he stopped the [individual], including information relayed by * * * police dispatchers." *Id.* at 500. Defendants contend that they are entitled to summary judgment on Count I because the information conveyed by the unknown 911 caller was sufficiently reliable and detailed to provide reasonable suspicion to stop Plaintiff and perform a protective pat down.

In opposition, Plaintiff cites *Florida v. J.L.*, 529 U.S. 266, 271 (2000), and argues that a 911 call from an unknown individual reporting a gun is insufficient to create reasonable suspicion. See [26], Pl.'s Resp. at 10. In *J.L.*, the Supreme Court reiterated "the requirement that an anonymous tip bear standard indicia of reliability in order to justify a stop." See 529 U.S. at 274. Although "'an anonymous tip *alone* seldom demonstrates the informant's basis of knowledge or veracity' * * * under appropriate circumstances, an anonymous tip can demonstrate 'sufficient indicia of reliability to provide reasonable suspicion to make [an] investigatory stop.'" *Navarette v. California*, 134 S. Ct. 1683, 1688 (2014) (quoting *Alabama v. White*, 496 U.S. 325, 327, 329 (1990)). Several circumstances that were present in this case establish that the Officers had reasonable suspicion to perform an investigatory stop of Plaintiff.

To begin, when an eyewitness reports an emergency situation, and provides sufficient detail to allow officers to identify a suspect, the Seventh Circuit has indicated that police are entitled to rely on that information to perform a *Terry* stop of the suspect. In *U.S. v. Drake*, the Court wrote:

> Here, we recognize the particular duty of police officers to speedily respond to emergency situation reported by individuals through the 911 system. * * * Even in the case of anonymous callers, two of our sister circuits have afforded eyewitness 911 reports of ongoing emergency situation the same treatment. We therefore presume the reliability of an eyewitness 911 call reporting an emergency situation for purposes of establishing reasonable suspicion, particularly where the caller identifies herself.

456 F.3d 771, 775 (7th Cir. 2006) (internal citations omitted). Although knowing a caller's identity makes the caller's information more reliable, police are not required to verify the identity of the caller, or his reliability, before locating the suspect described by a caller, if the circumstances require an immediate response. See *U.S. v. Wooden*, 551 F.3d 647, 650 (7th Cir. 2008) ("A 911 system designed to provide an emergency response to telephonic tips could not operate if the police had to verify the identity of all callers and test their claim to have seen crimes in progress."); *Drake*, 456 F.3d at 775 ("Requiring further indicia of reliability [from a 911 caller] would only jeopardize the usefulness of the 911 system and the ability of officers to prevent further danger to the public."). Further, in an emergency situation, "a need for a [police] dispatch can make reasonable a stop that would not be reasonable if the police had time to investigate at leisure." *Wooden*, 551 F.3d at 650.

*Wooden* involved a circumstance similar to that here, in which an anonymous 911 caller reported that a man who was arguing with his girlfriend had a gun. The Seventh Circuit concluded that police officers lawfully conducted a *Terry* stop after they received the information, even though the caller was anonymous. See *Wooden*, 551 F.3d at 648–49. Similarly, in *Drake* (where the caller did eventually identify herself), the Seventh Circuit upheld a stop of a car after a 911 caller reported that one of the occupants "pulled a gun" on her son-in-law. See 456 F.3d at 772–75. The Court explained that it was sufficient that the "911 call reported an immediate threat to public safety and that [the caller] provided sufficient details to allow the officers to identify the suspects." *Id.* at 775.

Additionally, the fact that the 911 caller reported the gun immediately—and that the police responded and located Plaintiff less than a minute later—supports the reasonableness of the stop. The caller's immediate report of a gun makes the information more reliable, as

"contemporaneous report[s]" have "long been treated as especially reliable" under the law. *Navarette*, 134 S. Ct. at 1689. Additionally, finding Plaintiff in the location described by the caller immediately after receiving the dispatch call makes it more likely that Plaintiff was in fact involved in the situation reported by the caller. See *United States v. Lenoir*, 318 F.3d 725, 729 (7th Cir. 2003) ("[P]olice observation of an individual, fitting a police dispatch description of a person involved in a disturbance, near in time and geographic location to the disturbance establishes a reasonable suspicion that the individual is the subject of the dispatch.").

Finally, the unknown caller used the 911 emergency system to report the gun. This is "another indicator of veracity," according to the Supreme Court. See *Navarette*, 134 S. Ct. at 1689. Even when a caller does not identify herself, the use of a 911 system alleviates some concern that an anonymous caller is not telling the truth, as 911 calls usually can be identified and traced, see *id.* at 1689–90, as appears to be the case here.

In summary, although 911 tips are not *per se* reliable under the law, see *Navarette*, 134 S. Ct. at 1690, here, the use of the 911 system, the perceived emergency situation, the caller's contemporaneous report, and the Officers' nearly simultaneous observation of Plaintiff in the location described—taken together—provided the Officers with reasonable suspicion to believe that Plaintiff was engaged in some sort of disturbance involving a gun. The Officers therefore were justified in stopping Plaintiff and performing a pat down. The Court thus concludes that Defendants are entitled to summary judgment on Plaintiff's unreasonable seizure claim to the extent that it alleges a constitutional violation with respect to the Officers' investigatory stop.

### 2. The Officers' Arrest of Plaintiff

Defendants also argue that summary judgment should be granted on Plaintiff's false arrest claim. "To be deemed reasonable, a warrantless arrest made in public must be supported

by probable cause, and so the existence of probable cause is an absolute defense to a § 1983 claim for false arrest." *Gutierrez v. Kermon*, 722 F.3d 1003, 1007 (7th Cir. 2013) (internal citations omitted). If Defendants had probable cause to believe that Plaintiff committed *any* crime, his claim is barred. See *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). Probable cause to arrest exists "if the totality of the circumstances known to the officer at the time of the arrest would warrant a reasonable person in believing that the arrestee had committed * * * a crime." *Gutierrez*, 722 F.3d at 1008. Probable cause is evaluated objectively. See *Huff v. Reichert*, 744 F.3d 999, 1007 (7th Cir. 2014). Even if probable cause does not exist, Defendants are entitled to qualified immunity if they had "arguable" probable cause. *Id.* "Arguable probable cause exists when a reasonable officer in the same circumstances and * * * possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law." *Id.* (internal quotations omitted). It applies if the officers reasonably, but mistakenly, believed that they had probable cause to arrest Plaintiff. *Gutierrez*, 722 F.3d at 1008.

In this case, Plaintiff was arrested outside his garage at 1212 S. Harding Avenue after the Officers found a gun in his car. Defendants contend that they had probable to believe that Plaintiff was in violation of an Illinois statute concerning the unlawful use of weapons, which provides that:

> A person commits the offense of unlawful use of weapons when he knowingly [ ] carries or possesses in any vehicle * * * *except when on his lands or in his own abode*, legal dwelling, or fixed place or business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm[.]

720 ILCS 5/24-1(a)(4) (emphasis added).[2]  Defendants contend that they had probable cause to believe that Plaintiff was in violation of this statute because when he was arrested, the Officers reasonably believed that he lived at a Hinsdale address, and not at the home on South Harding Avenue.  Specifically, the Officers' name check indicated that Plaintiff's car was registered to Plaintiff under a Hinsdale address.  See [21], Defs.' Mot. at 7.  According to Officer Thuestad's testimony at deposition, she ran the name check using LEADS, the electronic state database.  See [22], Defs.' Fact Stmt., Ex. F, at 42:8–43:3.  Plaintiff's driver's license also listed the same Hinsdale address.  See [21], Defs.' Mot. at 7 (citing [22], Defs.' Fact Stmt. at ¶¶ 25–26).  Plaintiff maintains that the Officers could not have reasonably believed that he wasn't in his own garage, because he told the Officers that they needed a warrant to enter *his* garage.  See [26], Pl.'s Resp. at 13 (citing [27], Pl.'s Fact Stmt. at ¶ 17) (emphasis added).  Plaintiff has not pointed to anything else in the record that indicates that he told the Officers, or that the Officers otherwise knew, that he actually lived at the 1212 S. Harding home where the garage was located.

Even though Plaintiff at one point indicated that he was in his own garage, the Court concludes that based on the totality of the information known to Defendants at the time that they acted, they had probable cause to believe that Plaintiff did not live at the address where the gun was found.  The Officers learned of the Hinsdale address by running Plaintiff's name through the LEADS database.  The Seventh Circuit has indicated that police are entitled to rely on the results of such searches.  In *United States v. Sholola*, the court of appeals found that, based on a LEADS search of a driver's license, police had reasonable suspicion to suspect the defendant of using a fraudulent license, because the search revealed that no record of the license existed.  See 124

---

[2]  It appears that Defendants intended to cite 720 ILCS 5/24-1(a)(4), and that they simply made a typographical error when citing this statutory provision as 720 ILCS 5.0/1(a)(4), as Defendants quote the above portion of 5/24-1(a)(4) in their brief.  See [21], Defs.' Mot. at 7.

F.3d 803, 813 (7th Cir. 1997). In so holding, the Court rejected the defendant's argument that no weight should have been placed on the results of the LEADS search, stating that "the validity of the license was clearly questionable, at best, *in light of the results of the computerized search*." See *id.* (emphasis added). Similarly here, the Officers reasonably relied on the LEADS information—particularly given that it matched the address listed on Plaintiff driver's license—despite Plaintiff indicating at one point that the garage was his own. "[O]nce an officer learns sufficient trustworthy information establishing probable cause, he is entitled to rely on what he knows in pursuing charges or an arrest, and is under no further duty to investigate." *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 744 (7th Cir. 2003) (affirming summary judgment to police officers and finding that arrest was supported by probable cause even though detective did not investigate plaintiff's alibi claim). And "[o]nce an officer has established probable cause on every element of a crime, he need not continue investigating to test the suspect's claim of innocence." *Id.* at 745–46. Accordingly, the Officers had probable cause to believe that Plaintiff was not in his own garage when they found a gun in his car.

Plaintiff also argues that Defendants could not reasonably have believed that he "possessed" the recovered gun because it was located in a bag and belonged to his deceased father. See [26], Pl.'s Resp. at 13 (citing [27], Pl.'s Fact Stmt. at ¶ 17). Defendants counter that their belief was reasonable because the gun was found in Plaintiff's car and the 911 caller stated that Plaintiff had just pulled a gun and was in a gray Cadillac. See [30], Defs.' Reply at 3–4. Although Plaintiff asserts that he never took the gun out of the bag, and did not actually possess it, constructive possession is sufficient to establish a possessory interest in a weapon. See *People v. Curry*, 100 Ill. App. 3d 405, 411–12 (Ill. App. Ct. 1st Dist. 1981); see also *Hicks v. Poppish*, 2011 WL 3756019, at *5 (N.D. Ill. Aug. 25, 2011). Constructive possession requires Defendants

to establish that (1) Plaintiff "had knowledge of the presence of the weapon; and (2) that [Plaintiff] exercised immediate and exclusive control over the area when the weapon was found." *Hicks*, 2011 WL 3756019, at *5 (quoting *People v. Ross*, 407 Ill. App. 3d 931 (Ill. App. Ct. 1st Dist. 2011)).

Viewing the facts surrounding Plaintiff's arrest objectively, a reasonable officer could suspect that Plaintiff constructively possessed the gun that was found in the gray Cadillac. The Officers learned of a 911 call in which the caller reported that a man sitting in a gray Cadillac at a specific location had just pulled a gun. Accepting as true the version of events set forth by Plaintiff, the Officers arrived at the location that the 911 caller describer a few moments later and found Plaintiff in a garage next to a gray Cadillac. The Officers conducted a pat down of Plaintiff, but no weapon was found. They then searched the gray Cadillac—in which according to the 911 caller, Plaintiff had been sitting a few moments earlier—and recovered a weapon in a bag under the front seat. Viewing these facts objectively, the Officers reasonably could have believed that Plaintiff knew that the gun was in the car and that Plaintiff had control of the area when the gun was found. The Officers therefore reasonably could have believed that Plaintiff possessed the gun at issue.

For all of these reasons, the Court grants summary judgment to Defendants on Plaintiff's unreasonable seizure count to the extent that it alleges a false arrest claim.

**B.    Count II—Unreasonable Search under the Fourth Amendment**

Defendants argue that they are entitled to summary judgment on Count Two, which asserts a § 1983 claim under the Fourth Amendment for the Officers' warrantless entry into Plaintiff's garage and search of his car. The Fourth Amendment "protects the security a man relies upon when he places himself or his property within a constitutionally protected area, be it

his home or his office, his hotel room or his automobile." *U.S. v. Bell*, 500 F.3d 609, 612 (7th Cir. 2007) (quoting *Hoffa v. United States*, 385 U.S. 293, 301 (1966)). Warrantless searches and seizures within a home * * * are presumptively unreasonable except under certain narrowly proscribed exceptions." *Id.* A risk of danger to the police or others qualifies as one such exception when police have a reasonable belief that the exigency requires immediate attention and there is no time to secure a warrant. See *Lenoir*, 318 F.3d at 730. A call to 911 that "report[s] an emergency can be enough to support [a] warrantless search[ ] under the exigent circumstances exception, particularly where * * * the caller identified himself." *United States v. Richardson*, 208 F.3d 626, 630 (7th Cir. 2000). Such a call "fits neatly with a central purpose of the exigent circumstances (or emergency) exception to the warrant requirement, namely, to ensure that the police * * * are able to assist persons in danger or otherwise in need of assistance." *Id.* That said, the Seventh Circuit has not "exclude[d] the possibility of a case in which it would be objectively unreasonable for a police officer to rely on a 911 call, because of additional information available to the officer[.]" *Id.* at 631.

Here, the Officers contend that exigent circumstances required them to enter Plaintiff's garage and search his car to investigate the 911 call that reported that a gun had just been "pulled." The Officers reasonably believed, Defendants argue, that "if they left the scene, the gun would be retrieved and the threat previously levied by pointing the gun could be carried out." [21], Defs.' Mot. at 10. Defendants alternatively contend that they are entitled to qualified immunity. Plaintiff counters that the Officers' belief that there was an emergency gun threat was not reasonable. To begin, when the Officers—who were only 30 to 40 feet from the garage— arrived just moments after receiving the dispatch call, Plaintiff was alone in the garage and denied that he was involved in an altercation. See [26], Pl.'s Resp. at 6. Additionally, the 911

caller did not identify himself and provided little physical or other description of the individual who "pulled" a gun, aside from gender and location. See *id.* at 5.

In support of their motion, Defendants cite *United States v. Sodagar*, 2008 WL 4865577, at *4 (N.D. Ill. July 23, 2008), in which a district court upheld the warrantless search of a home based on exigent circumstances. In *Sodagar*, police searched a bedroom closet after receiving a 911 call from a boy stating that his father had threatened to shoot him. After arriving at the house, the son again told police that his father had threatened him with a gun. See *id.* The boy's mother told police that the gun might be in the bedroom closet, thereby "corroborating the possibility that a gun was involved." *Id.* The district court found that the exigency of possible gun violence justified the warrantless search, because the officers "reasonably could have anticipated that if they had left the scene, the conflict could have reignited, and if there was a gun inside [the father] might have later acted on the threats reported by [his son]." *Id.* Defendants also rely on *United States v. Ware*, 914 F.2d 997 (7th Cir. 1990). In *Ware*, the Seventh Circuit stated in dicta that, had a police officer performed a warrantless search of a car, the search would have qualified under the exigent circumstances exception because it was reasonable for the officer to believe that the car contained the gun used in an attempted robbery. *Id.* at 1000–01. In that case, a tavern owner called police and reported that a man had attempted to rob the tavern with a saw-off shot gun. See *id.* at 998. A radio dispatcher described the robbery suspect's vehicle as a small white car, and police pursued a car that matched the description in the same area. See *id.*

The circumstances here are not on all-fours with any of Defendants' cases. In this case, the caller reporting a "pulled" gun was anonymous, and nothing corroborated his claim that a gun was brandished or a shooting was threatened. Even more, when the Officers arrived at

Plaintiff's garage, there was no sign of a person who had supposedly been threatened with a gun. Plaintiff also denied any involvement, and a *Terry* stop and protective pat down revealed no sign of a weapon. In short, Defendants have not cited—nor has the Court's own research located— any on-point case that clearly authorizes Defendants' warrantless intrusion into Plaintiff's car and garage under the exigent circumstances doctrine.[3]

But that is not the ultimate question here on summary judgment, for the law permits police officers some latitude to make reasonable mistakes in the often split-second judgments they must make in the line of duty. "Qualified immunity protects public officials from liability for damages if their actions did not violate clearly established rights of which a reasonable person would have known." *Fleming v. Livingston Cnty., Ill.,* 674 F.3d 874, 879 (7th Cir. 2012) (quoting *Catlin v. City of Wheaton*, 574 F.3d 361, 365 (7th Cir. 2009)). The doctrine applies when a reasonable law enforcement officer in the defendant's position would have believed that, at the time he acted, his actions were within the bounds of the law. *Belcher v. Norton,* 497 F.3d 742, 749 (7th Cir. 2007). It "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244-45 (2012) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011)) (internal quotation marks omitted). The plaintiff bears the burden of showing that the constitutional right allegedly violated was clearly established at the

---

[3] Defendants also cite *United States v. Hopewell*, 498 F. Appx. 609 (7th Cir. 2012), in which the Seventh Circuit upheld the warrantless search of a backpack. The *Hopewell* holding does not provide direct support for finding exigent circumstances here. There, the arresting officer testified that a 911 caller reported that a loaded gun had been pointed at him by a male bus passenger who then placed the gun into a red backpack. The caller also described the man's appearance, clothing, and identified the bus's route and number. See *id.* at 610. A police officer searched the backpack after performing a *Terry* stop, because he "feared that a cocked revolver equipped with a light trigger could easily fire" and harm others. *Id.* The Seventh Circuit found that the officer could reasonably conclude that the gun posed a safety risk given his experience in firearms safety. See *id.* at 612. Here, however, the claimed exigency is that the anonymous 911 caller might again be threated if the Officers did not enter Plaintiff's garage search for a gun.

time of the challenged conduct. *Purvis v. Oest*, 614 F.3d 713, 717 (7th Cir. 2010). A plaintiff also may prevail by showing that "the conduct [at issue] is so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Id.* at 717–18 (quoting *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008)).

As discussed above, it was clearly established that a warrantless intrusion into a garage and car violates the Fourth Amendment, if an appropriate exception, such as the exigent circumstance cited by Defendants, does not apply. See, *e.g.*, *Bell*, 500 F.3d at 612; *Lenoir*, 318 F.3d at 730. Just as Defendants have not demonstrated that the circumstances entitled them to conduct a warrantless search, Plaintiff likewise has not established the contrary proposition that clearly established law forbid Defendants from relying on the exigent circumstances doctrine to conduct the search in question. Accordingly, the Court concludes that qualified immunity applies.

The Seventh Circuit has stated that calls to 911 that "report[ ] an emergency can be enough to support warrantless searches under the exigent circumstances exception * * *." See *Richardson*, 208 F.3d at 630. Moreover, perceived threats of possible gun violence often qualify as exigent circumstances that support warrantless searches. See, *e.g.*, *United States. v. Kempf*, 400 F.3d 501, 503 (7th Cir. 2005) (exigent circumstances justified warrantless entry into home after defendant sought treatment at hospital for accidently shooting himself in the leg because police were concerned about the safety of teenager who was in the home); *United States v. Reed*, 935 F.2d 641, 643 (4th Cir. 1991) (discussing various examples in which Circuit Courts found that "the presence of guns" can "justify searches and seizures on the basis of exigent circumstances."); *Sodagar*, 2008 WL 4865577, at *3–4. Given that the 911 caller indicated that he had been threatened with a gun, or at the very least, that a gun had been brandished,

Defendants were not "plainly incompetent" in believing that the dispatch call qualified as an emergency that allowed them to search Plaintiff's car for a gun without a warrant. Defendants reasonably could have believed that their warrantless search was lawful because they needed to ensure that Plaintiff did not have a gun and pose a threat to others. Defendants therefore are entitled to qualified immunity and summary judgment is granted to them on Count Two.[4]

## C. Count III—Malicious Prosecution

Finally, Defendants contend that they are entitled to summary judgment on Plaintiff's state law malicious prosecution claim. "[T]o prevail on a malicious prosecution claim, a plaintiff must establish '(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff.'" *Holland v. City of Chi.,* 643 F.3d 248, 254 (7th Cir. 2011) (quoting *Swick v. Liautaud*, 169 Ill. 2d 504, 512 (Ill. 1996)). If any of the elements is not satisfied, the plaintiff cannot recover. *Swick*, 169 Ill. 2d at 512. Defendants argue that summary judgment should be granted on this claim because (1) Plaintiff cannot establish that the criminal charges were terminated in his favor, and (2) there was probable cause for the charges. The Court concludes that the second of these arguments is both correct and dispositive, and therefore grants summary judgment to Defendants on this claim as well.[5]

---

[4] Defendants secondarily argue that they were entitled to conduct the warrantless search because they had probable cause to believe that the car contained evidence of criminal activity. See [21], Defs.' Mot. at 11 (citing *United States v. McGuire*, 957 F.2d 310 (7th Cir. 1992)). Because the Court has determined that Defendants are entitled to qualified immunity under the exigent circumstances exception, the Court will not discuss the merits of Defendants' alternative ground for summary judgment.

[5] Defendants also argue that Officer Jehl cannot be held liable for malicious prosecution because he did not commence or continue proceedings against Plaintiff, but merely clerked the criminal complaints. See [21], Defs.' Mot. at 15. Because the Court concludes that Plaintiff cannot satisfy one of the elements of a

To prevail on his malicious prosecution claim, Plaintiff must establish the absence of probable cause for his prosecution. See *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 681–82 (7th Cir. 2007). A finding of probable cause is an absolute bar to a malicious prosecution claim, but where there are multiple charges, "the basis for each charge must be examined separately." *Id.* at 682. If probable cause is lacking "as to any charge, the defendants still may be held liable for [the plaintiff's] prosecution on that unsupported charge." *Id.* The Court therefore reviews the basis for each of the relevant offenses with which Plaintiff was charged: aggravated unlawful use of a weapon in violation of 720 ILCS 5/24-1.6(a)(1) (later amended by the prosecutor to a felon in possession charge under 720 ILCS 5/24-1.1(a)) and possession of a firearm and ammunition without a valid FOID Card under 430 ILCS 65/2(a)(1) & (2). Plaintiff does not make any new arguments with respect to probable cause for these various charges and simply stands on his previous argument that the Officers lacked probable cause to arrest him. See [26], Pl.'s Resp. at 13–14.

With respect to the aggravated unlawful possession charge, section 24-1.6(a)(1) makes it unlawful to possess a firearm in a vehicle except when on one's own land, in one's own home or place of business, or when one is in another person's dwelling as an invitee, where an aggravating factor also is present. See 720 ILCS 5/24-1.6(a). Possessing a firearm without a valid FOID Card qualifies as an aggravating factor. See *id.* at § 24-1.6(a)(3)(C). As to the possession without a valid FOID Card charges, 430 ILCS 65/2(a)(1)-(2) makes it unlawful for a person to "possess any firearm * * * [or] firearm ammunition within this State without having in his or her possession a Firearm Owner's Identification Card previously issued in his or her name[.]"

_____

malicious prosecution claim, the Court need not address the merits of this separate basis for summary judgment.

Defendants had probable cause to believe that Plaintiff violated these statutes. To begin, and for the reasons discussed before, Defendants had probable cause to believe that Plaintiff possessed the gun that contained five rounds of ammunition. Additionally, with respect to the unlawful possession charge under 720 ILCS 5/24-1.6(a), Defendants also had probable cause to believe that Plaintiff was not in his own garage with the gun, given that his driver's license listed a Hinsdale address and the LEADS name check returned the same address. It also is undisputed that the Officers learned at the police station that Plaintiff's FOID Card had been revoked, see [25], Pl.'s Resp. to Fact Stmt. at ¶ 31, thereby establishing probable cause for the presence of an aggravating factor for the unlawful possession charge, as well as probable cause for the 430 ILCS 65/2 charges. Finally, with respect to the felon in possession of a firearm charge under 720 ILCS 5/24-1.1(a), Defendants contend that the Officers did not initiate the charges—as the prosecutor amended the initial possession charge to this one—and therefore Defendants cannot be held liable on this charge. See [21], Defs.' Mot. at 14. Plaintiff did not refute, or even respond to, this argument, see [26], Pl.'s Resp. at 13–14, and so he has conceded this point. See *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument * * * results in waiver" and a party's "silence" in response to an arguments leads to the conclusion that a point is conceded). In any case, it is undisputed that Plaintiff has a felony conviction on his record. See [22], Defs.' Fact Stmt. at ¶ 8.

In conclusion, the Court grants summary judgment to Defendants on Count III, Plaintiff's malicious prosecution claim, because the Court concludes that there was probable cause to charge Plaintiff with aggravated unlawful possession of a firearm and possession of a firearm and ammunition without a valid FOID Card.[6]

---

[6] Because Defendants had probable cause to issue the charges against Plaintiff, the Court need not address Defendants' additional argument that they are entitled to summary judgment on Count III because

## IV.     Conclusion

For the reasons stated above, the Court concludes that Defendants are entitled to summary judgment.  Defendants' motion [21] therefore is granted and judgment is entered in favor of Defendants.

Dated:  January 28, 2015

Robert M. Dow, Jr.
United States District Judge

---

Plaintiff has not demonstrated a triable issue of fact in regard to whether the *nolle prosequi* of the charges qualifies as a favorable outcome.